UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KENNETH HARGROVE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

NO. CV-12-3071-RHW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 20, and Defendant's Motion for Summary Judgment, ECF No. 22. The motions were heard without oral argument. Plaintiff is represented by D. James Tree. Defendant is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Christopher J. Brackett.

**I.  Jurisdiction**

On February 3, 2009, Plaintiff Ken R. Hargrove filed both a Title II application for disability insurance benefits (DIB) and a Title XVI application for Supplemental Social Security Income (SSI). Plaintiff alleges he has been disabled beginning April 22, 2006.

His application was denied initially on May 27, 2009, and again denied on reconsideration on September 25, 2009. A timely request for a hearing was made. On April 21, 2011, Plaintiff appeared in Yakima, Washington before Administrative Law Judge (ALJ) James W. Sherry. Scott Whitmer, vocational expert, also appeared at the hearing. Plaintiff was represented by attorney D.

James Tree.

The ALJ found that Plaintiff was not disabled from April 22, 2006, the date the alleged disability began, to May 19, 2011, the date of the decision. Plaintiff timely requested review by the Appeals Council, which was denied on March 5, 2012. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h). Plaintiff timely filed an appeal with the U.S. District Court for the Eastern District of Washington on May 9, 2012. The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.*  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  *Id.*  If the claimant cannot perform this work, the ALJ proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity.  *Id*.

### III.  Standard of Review

The Commissioner's determination will be set aside only when the ALJ's

findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

IV. **Statement of Facts**

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here.

At the time of the hearing, Plaintiff was 50 years old. He is divorced with adult children. He currently lives with his fiancé, who is on disability, and her father, who is blind. He earned a high school diploma.

He spent three years on active duty in the Army, and three years on non-active duty. In 1980, he was on a team that went to Mt. St. Helens to recover dead bodies as a result of the eruption. He was on the mountain during the second explosion on May 25, 1980. As a result, he struggles with death and fire.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

At the time of the hearing, he testified that he was working at Olympic Fruit. He first worked as an apple packer, but then was reassigned to be a bin repairer. He also worked at other fruit companies and other temporary jobs, including cleaning up apartments. It is reported that he was employed at Western State Hospital for 13 years, as a CNA, LPN, and RN. He was also a psychiatric security attendant. (Tr. 765.) He owned his own business and worked primarily as a laborer in construction. (Tr. 765.) It appears that he attended college in 2008 and 2009. (Tr. 922, 923.) In the Fall of 2010, he reported that he was working nearly a full-time position at Wilson Irrigation and Real Estate.¹ (Tr. 887; Tr. 890.)

He states that he has pain in his back, upper shoulders, in his fingers, joints, knees, and ankles. (Tr. 64.) He has also reported that he has intrusive memories, chronic anxiety, saddened mood, and periods of dissociation. (Tr. 769.) Plaintiff reported that he has been clean and sober since 2007, 2008.² (Tr. 68.)

Plaintiff has two prior criminal convictions: in 2007 for drug dealing and bail jumping³; and in 2009 for DUI. (Tr. 904.)

## V. The ALJ's findings

The ALJ found Plaintiff met the insured status requirements of the Social

---

¹He reported that his boss buys drug houses and they rebuild them to be safe clean and sober housing for people in recovery. (Tr. 890.)

²Plaintiff reported to Lauren Akers, ARNP, in 2010, that he had a few relapses during the last three years, but he has been mostly clean and sober over the last three years. (Tr. 764.)

³Plaintiff indicates that he was at the wrong place at the wrong time. (Tr. 765) ("He was arrested in 2007 for being a drug dealer, which he denies. He was apparently talking to several men when the police came; the men fled and he was arrested. Apparently, they were into dealing drugs."). He spent a total of seven months in the Yakima County Jail, and received a year probation.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1  Security Act through September 30, 2010. (Tr. 20.)

2      At step one, the ALJ found Plaintiff engaged in substantial gainful activity
3  during the alleged period of disability. (Tr. 22.) The ALJ explained that while the
4  record shows that Plaintiff worked several jobs during the alleged period of
5  disability, it was not clear whether the jobs reached the level of substantial gainful
6  activity. (Tr. 22.) As a result, the ALJ considered Plaintiff's alleged disability from
7  April 22, 2006 through the date of the hearing. (Tr. 22.)

8      At step two, the ALJ found Plaintiff had the following severe impairments:
9  major depressive disorder with psychotic features, post traumatic stress disorder
10 (PTSD), polysubstance dependence, osteoarthritis in multiple joints, hypertension,
11 left shoulder bursitis, lumbar degenerative disc disease, and obesity.[4] (Tr. 23.)

12     At step three, the ALJ found Plaintiff did not have an impairment or
13 combination of impairments that meets or medically equals one of the listed
14 impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.) The ALJ
15 considered whether Plaintiff met the listing for 1.02 (major dysfunction of a joint);
16 1.04 (Disorders of the spine); 12.04 (Affective Disorders), 12.06 (Anxiety-related
17 disorders), and 12.09 (Substance Addiction Disorders) (Tr. 23.)

18     The ALJ found Plaintiff has the residual functional capacity[5] to perform

---

[4] The ALJ found that Plaintiff's obesity did not result in any significant limitation of his ability to perform work-related activity.

[5] "RFC is what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments. It is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to perform work-related physical and mental activities. . . RFC is the individual's maximum remaining ability to perform

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

light work[6] as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional postural, environmental and mental limitations: able to lift or carry 20 pounds occasionally and lift or carry 10 pounds frequently; can stand or work for 6 hours in an eight-hour workday; can sit for 6 hours in an eight-hour work day; able to occasionally climb ramps or stairs, stoop, crouch, kneel and crawl; frequently balance, but never climb ladders, ropes, or scaffolds; avoid concentrated exposure to excessive vibration, unprotected heights, and moving machinery; can perform simple, routine and repetitive tasks; able to perform some well-learned detailed tasks; can follow 1-2 step instructions; occasional or superficial contact with the general public and superficial contact with coworkers and supervisors. (Tr. 25.)

At step four, the ALJ found Plaintiff was not able to perform any past relevant work (packer, produce sorter, bin repairer, landscape laborer, industrial cleaner, construction worker, tree trimmer helper and fish processor, based on the vocational expert's testimony. (Tr. 27.)

At step five, the ALJ considered Plaintiff's age, education, work experience,

---

sustained work on a regular and continuing basis: i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR96-6P.

[6]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 CFR 404.1567(b); 416.967(b).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

and residual functional capacity and found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Specifically, the ALJ found that Plaintiff can perform the representative jobs of assembler, hand packer, and scale operator. (Tr. 29.)

**VI.  Issues for Review**

Plaintiff presents the following issues with respect to the ALJ's findings:

1. The ALJ committed reversible error by failing to properly consider the VE's testimony that Plaintiff could not work with the limitations opined by Dr. Kester.

2. The ALJ committed reversible error by improperly rejecting Drs. Birdlebough, Jackson, Mooney, and Aslam.

3. The ALJ committed reversible error by omitting Dr. Tarique's opinion that due to severe impairments Plaintiff was unable to participate in even pre-employment activities.

4.  The ALJ committed reversible error by completely rejecting the opinion of Dr. Deutsch who opined that Plaintiff was disabled under SSA standards.

**VII.  Discussion**

    **1.  Consideration of Dr. Kester's Opinion**

Plaintiff argues the ALJ improperly or failed to consider Dr. Kester's opinion. Dr. Kester noted that Plaintiff had a moderate functional limitation in difficulties in maintaining social function and difficulties in maintaining concentration, persistence, or pace. (Tr. 688). He identified the following mental activities in which Plaintiff is moderately limited: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to work in coordination with or proximity to others without being distracted by them; (3) the ability to interact appropriately with the general public; and (4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 693.)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

The ALJ included these limitations in determining Plaintiff's RFC, when he concluded that Plaintiff's RFC included the ability to perform simple, routine and repetitive tasks; to perform some well-learned detailed tasks; to follow 1-2 step instructions; and to have occasional or superficial contact with the general public and superficial contact with coworkers and supervisors. Thus, the ALJ properly considered Dr. Kester's opinion.

Plaintiff also argues that the VE testified that the moderate limitations identified by Dr. Kester "would preclude a lot, if not all, work."[7] While the VE did make this statement, it is important to understand the context in which this statement was made. Plaintiff's counsel presented a hypothetical to the VE that set the exertional limits to sedentary, with only occasional balancing, bending, climbing, handling, reaching, sitting, stooping, and kneeling. (Tr. 85.) The VE stated that Plaintiff would not be able to perform past work or other work in the regional or national economy because a sedentary job in the unskilled category is scarce. (Tr. 85.) Plaintiff's counsel then added additional limitations to the hypothetical person: significant interference in the ability to maintain attention and concentration for extended periods; significant interference in the ability to work in coordination with or proximity to others without being distracted by them; and significant interference in the ability to interact appropriately with the general public and in their ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 86.) The VE agreed that these

---

[7]Upon questioning by the ALJ, the vocational expert testified that if he took Plaintiff's testimony into consideration, it was his opinion that Plaintiff was precluded from fulltime gainful employment. (Tr. 83.) The ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to be credible, (Tr. 27.), and Plaintiff has not challenged that conclusion in his appeal.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

limitations would preclude work.

The VE's testimony does not support Plaintiff's argument that the ALJ erred in not crediting Dr. Kester's testimony. The significance of the VE's testimony lies in the fact that Plaintiff's hypothetical required a sedentary exertion level, while the ALJ's hypothetical included a light exertion level. Dr. Kester conducted a Psychiatric Review, not a physical assessment. The additional mental limitations did not add or detract from the VE's testimony, namely that Plaintiff would not be employable if he was limited to sedentary exertion level.

The ALJ did not commit reversible error because he properly considered Dr. Kester's testimony and incorporated his opinion into the RFC.

### 2. Consideration of Drs. Birdlebough's, Jackson's, Mooney's, and Aslam's Opinions

Plaintiff argues the ALJ erroneously rejected the opinions of Dr. Birdlebough, Jackson, Mooney and Aslam by erroneously concluding that their opinions were not consistent with the evidence of record. Plaintiff argued that because these opinions were consistent with each other, it was legal error for the ALJ to reject all four opinions.

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). More weight is given to a treating physician's opinion than to the opinion of a non-treating physician because a treating physician is employed to cure and has greater opportunity to know and observe the patient as an individual. 20 C.F.R. § 416.927(d)(1); *see also Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 820 (9th Cir. 1995). If the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in

the record for doing so. *Id.* Similarly, greater weight is given to the opinion of an examining physician than a non-examining physician. *Andrews*, 53 F.3d at 1041. Opinions of physicians who examined the claimant only once should be given less weight than the physicians who treated him. 20 C.F.R. § 404.1527; *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004).

### A. Dr. Birdlebough

Dr. Birdlebough, Ph.D, ARNP, performed a Psychiatric Evaluation in April, 2009. Plaintiff reported he was withdrawn and anxious, scared of death and dying, heard voices intermittently, and easily forgot things. (Tr. 655.) He reported that he has never been in therapy for more than a couple of sessions, and he did not believe he had been on any antipsychotic medications since the early 90s. (Tr. 655.) Dr. Birdlebough noted that Plaintiff's medication compliance is intermittent. (Tr. 657.) He was started on medication to ameliorate or lessen the hallucinations. Dr. Birdlebough gave Plaintiff a 40 GAF. Notably, Dr. Kester rejected the GAF of 40 due to Plaintiff's cognitive functioning at the consultive examination, his independent activities of daily living, and his ability to relate superficially with others. (Tr. 690.)

The ALJ gave Dr. Birdlebough's opinion little weight because it was not consistent with the medical evidence of record, or with Plaintiff's testimony regarding his work history. Plaintiff testified that at the time of the hearing in April, 2011, he had been working since late September for Olympic Fruit. While initially he worked 40 hours a week, at the time of the hearing, it was down to three or four days, 8 hours a day. (Tr. 52.) Specifically, on November 22, 2010, Plaintiff reported to Robert Vasquez that he was still working, but the job slowed "due to not having a lot of available jobs to do." (Tr. 881.) Plaintiff also testified that he worked for three weeks at Valley Fruit in 2010 sorting cherries. Also, in August, 2010, Plaintiff reported to Robert Navarro that he is currently working fixing old run down drug houses and making them clean and sober housing. (Tr.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

891.) Although Plaintiff testified he is in constant pain, he does not take any prescription pain medication. Instead, he takes Tylenol or Ibuprofen. (Tr. 49.) Finally, at the hearing, Plaintiff indicated that he is able to superficially relate to others. He testified that the younger workers help him, give him a break, or give him the shorter line. (Tr. 66.)

The ALJ gave specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Birdlebough's opinion, and thus, did not commit clear error. Moreover, the record supports Dr. Kester's opinion that Dr. Birdlebough's determination of a GAF of 40 was not supported by the record.

      **B.**    **Dr. Jackson**

Dr. Jackson was Plaintiff's treatment provider from December, 2008 to April, 2010. She completed two DSHS physical evaluations, one in January, 2009 and one in January, 2010. She concluded that Plaintiff's overall work level was sedentary. (Tr. 730; 748.) She believed his chronic back pain had between a significant and very significant interference with the ability to perform one or more basic work-related activities. In December, 2008, she noted that Plaintiff has "back pain in a significant amount, with decreased range of motion and tenderness over the lumbosacral spine that will keep him from being employable for the next 3 months." (Tr. 753.) In January, 2009, Dr. Jackson indicated that she filled out the DSHS paperwork, and ordered a CT scan of his back. Her intention was to get him referred to management to improve his employability. (Tr. 623.)

In March, 2009, after Dr. Jackson reviewed the CT scan, she noted that it was not clear that Plaintiff's pain was coming from his herniated disc. She also noted that the CT scan did not reveal any nerve root impingement. (Tr. 626.) Dr. Jackson saw Plaintiff in April, 2010. At that time, she discontinued the pain medication, noting that Plaintiff believed that he did not really need the medication. (Tr. 789.)

The ALJ gave little weight to Dr. Jackson's testimony because her opinions

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

were not supported by the evidence of the record, particularly Plaintiff's work history since the alleged onset date, and were not based upon substantial objective evidence. (Tr. 27.) The ALJ noted that diagnostic imaging of Plaintiff's back revealed relatively mild degenerative disk disease. (Tr. 26.) Imaging of Plaintiff's cervical, thoracic, and lumbar spines were normal in May, 2006 and new imaging revealed no significant changes. (Tr. 26.) In February, 2009, Plaintiff indicated that he was doing okay with his chronic back pain. (Tr. 624.) The ALJ also noted that many of the jobs Plaintiff worked at since 2006 involved manual labor and appear to have required Plaintiff to lift more than 20 pounds and remain on his feet most, if not all of the day. (Tr. 27.)

Here, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Jackson's conclusions that Plaintiff is limited to sedentary exertion levels, and thus, did not commit clear error.

### C. Dr. Mooney

Dr. Mooney saw Plaintiff between December, 2004 and January, 2009. On December 8, 2004, Dr. Mooney completed a Physical Evaluation for DSHS in which she concluded that Plaintiff was limited to a sedentary work level. (Tr. 569.) She did not identify any specific areas[8] where Plaintiff had restricted mobility, agility, or flexibility, but concluded Plaintiff was moderately affected in sitting, standing, walking, lifting, handling, and carrying. (Tr. 569.) Plaintiff was to be re-evaluated in 3 months. (Tr. 570.) Dr. Mooney completed another Physical Evaluation in March, 2005. (Tr. 578.) Again, she found that Plaintiff was limited to a sedentary work level and stated that Plaintiff should be re-evaluated in three months. (Tr. 578.)

In April and May, 2005, Plaintiff reported that his back pain was not

---

[8]Options on the form included: balancing, bending climbing, crouching, handling, kneeling, pulling, reaching, sitting, and stooping. (Tr. 569.)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

bothering him as much, but his right knee was bothering him. (Tr. 533.) A review of the MRI of the right knee showed very mild degenerative changes in the medial joint compartment. (Tr. 533.) Dr. Mooney ordered physical therapy, which Plaintiff did not complete. (Tr. 533.)

The ALJ gave Dr. Mooney's opinion little weight because it was not consistent with the evidence of the record and because it was not consistent with the State agency medical consultants. This was not in err. Diagnostic imaging has consistently not supported Plaintiff's allegations that his osteoarthritis, joint pain, back pain, and shoulder pain limit his ability to work. The ALJ is required to resolve conflicts in the record, and the ALJ gave specific and legitimate reasons for rejecting Dr. Mooney's opinion.

### D. Dr. Aslam Tufail

In May 3, 2006, Dr. Tufail completed a physical evaluation for DSHS and concluded that Plaintiff was limited to a sedentary work load, due to back and shoulder pain. (Tr. 581.) Imaging of the spine taken on that same day, however, was normal. (Tr. 584.)

The ALJ gave Dr. Tufail's opinion little weight because it was not consistent with the evidence of the record and because it was not consistent with the State agency medical consultants. This was not in err. Diagnostic imaging has consistently not supported Plaintiff's allegations that his osteoarthritis, joint pain, back pain, and shoulder pain limit his ability to work. The ALJ is required to resolve conflicts in the record, and the ALJ gave specific and legitimate reasons for rejecting Dr. Tufail's opinion.

### 3. Dr. Tarique's Opinion

Plaintiff argues the ALJ committed reversible error by omitting Dr. Tarique's opinion that due to severe impairments Plaintiff was unable to participate in even pre-employment activities.

In October, 2008, Dr. Tarique completed a physical evaluation for DSHS.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

(Tr. 594.) At that time, Plaintiff's complaints and symptoms were pain in back, knees, ankles and hands. (Tr. 591.) Dr. Tarique found that Plaintiff was capable of a light work level. (Tr. 593.) Specifically, he found no significant interference caused by the knee, ankle, and back pain. (Tr. 593.) However, Dr. Tarique checked the No box, indicating that Plaintiff was not able to participate in pre-employment activities such as job search or employment classes, because of "medical management." (Tr. 594.) Imaging studies were conducted. The results were the same as compared to studies conducted in May, 2006. (Tr. 596.)

The ALJ gave great weight to the opinion of Dr. Tarique because it was consistent with the medical evidence of record and the opinion of the State agency medical consultant. (Tr. 27.)

The ALJ did not err in not commenting on or relying on Dr. Tarique's opinions regarding Plaintiff's participation in pre-employment activities. This statement is inconsequential to a disability determination.

**4.    Dr. Deutsch's Opinion**

Plaintiff argues the ALJ committed reversible error by completely rejecting the opinion of Dr. Deutsch who opined that Plaintiff was disabled under SSA standards.

In a Certification for Medicaid: GAX Decision form, dated January 19, 2009, Dr. David Deutsch approved GAX. (Tr. 736.) He concluded that Plaintiff met the listing of 12-04. (Tr. 736.) With respect to Plaintiff's psychological impairments, Dr. Deutsch noted:

> 48 yr old male with Major Depression, Single episode. Severity listed as Mod. Duration listed as 2 to 3 years. Examiner indicates he is "chronically mentally ill." Meets listing 12-04.

(Tr. 736.)

With respect to Plaintiff's physical impairments, Dr. Deutsch noted:

> Diagnosed as Back pain of mod to marked severity, but no objective evidence presented. Also Gout and Hyptertension of mold [sic] severity. Work capability listed as SED. At age 48 he is not SSI eligible and thus GAX denial.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

(Tr. 736.)

Here, the ALJ did not specifically reference Dr. Deutsch's opinion, but he did refer to Dick Moen's January 13, 2009 Psychological evaluation and Dr. Jackson's January 9, 2009 physical evaluation, which was the underlying basis for Dr. Deutsch's decision. (Tr. 26, 27). Any error in failing to specifically refer to the GAX certification was harmless.

Plaintiff argues that the ALJ should have given at least as much weight to this decision as is required of VA disability decisions. In cases where the VA has made a disability determination, the Ninth Circuit has instructed "because social security disability and VA disability programs serve the same governmental purpose–providing benefits to those unable to work because of a serious disability, the ALJ must give great weight to a VA determination of disability." *Turner v. Commissioner of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The ALJ may give less weight to a VA disability rating if he or she "gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* Plaintiff fails to cite, however, any authority requiring the Court to treat state agency disability determinations the same as VA disability determinations. On the other hand, 20 C.F.R. § 416.904 states that disability determinations made by other governmental agencies are "not binding" on the ALJ.[9]

The ALJ did not err in failing to specifically refer to Dr. Deutsch's decision regarding GAX eligibility, or in failing to give weight to that decision. Dr.

---

[9]20 C.F.R. § 416.904 states:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

Deutsch's statements are conclusory, unsupported and not entitled to any weight, and therefore are inconsequential to a disability determination.

### 5. Substantial Evidence

There is substantial evidence to support the ALJ's decision that Plaintiff is not disabled.

For instance, in September, 2009, Dr. Gardner noted:

> Credibility of allegations is less than full. He did not present mental health issues in long term primary care but has in entitlement exams and in brief participation at CWCMH where he sought Xanax. He has minimized recent chem. dependency.

(Tr. 705.)

Around this same time, Dr. Scottolini concluded that Plaintiff was using his physical problems to meet his psychological needs and that clinical findings, including imaging studies, did not support alleged severity of symptomatology and functional impact. (Tr. 704.)

## VIII. Conclusion

Plaintiff has not met his burden of showing the ALJ committed legal error, or that his conclusion that Plaintiff was not disabled from April 22, 2006 to May 19, 2011, is not supported by substantial evidence. The ALJ properly found that Plaintiff was capable of performing the requirements of representative occupations such as assembler, hand packer, and scale operator.

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF 20, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

3. The decision of the Commissioner denying benefits is **affirmed**.

///
///
///
///

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 17

4.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel, and **close the file**.

**DATED** this 5th day of February, 2014.

*s/Robert H. Whaley*

ROBERT H. WHALEY
United States District Judge

Q:\RHW\aCIVIL\2012\Hargrove (SS)\sj.wpd

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 18